The opinion of the Court was delivered by
DaRgan, Ch.
John Bull, the intestate, died seized of real estate. He was a native citizen. He left surviving him, his wife, who at the time of his death was, and still is a resident of the State, but who is an alien. Besides her he left no nearer relations, than his three cousins german, who are native born citizens, and are plaintiffs in this cause.
The only question submitted, .either on circuit, or in this court, is, whether the widow is entitled to take under the provisions of the Act of 1828, (6 Stat. 363,) such a portion of the intestate’s estate, as she would have been entitled to take if she had been a citizen.
The Act of 1828 is entitled “ An Act to, amend the escheat laws in relation to the widows of citizens of this State.” It enacts, “ that no lands of which any citizen of this State shall die seized, possessed, or interested in, shall vest in the State, or be liable to escheat, where such person shall lea've a widow, *63 a resident of the State, although such widow shall not have become a naturalized citizen; hut the said land shall pass by will or descent, to such widow in the manner already provided by law.”
It is said, that this Act is to be construed in pari materia with the Act of 1791, (5 Stat. 162,) which is a general law of distributions, and the Act of 1826, (6 Stat. 284,) which is emendatory thereof, and which gives the widow the whole of her intestate husband’s real estate under certain circumstances. The rule of construction which has been invoked is too familiar for comment; it is its application to this case, which is questionable. The subject matter of the two Acts last referred to relates to the distribution of intestate’s estates, while the purpose of the Act of 1828 is to amend the escheat laws. The subjects are as diverse as it is possible for them to be. But if the Act of 1828 were to be construed in the manner contended for, it would afford us no aid in its interpretation. There is no difficulty, or doubt, as to what the widow of the intestate would be entitled to take under our Acts of distribution, if she is entitled to take at all. The question is, whether the fact of her being an alien, and not naturalized, does not exclude her altogether under the circumstances of this ease.
If the intestate had left no kindred entitled to take his estate under the provisions of the Act of 1791, then the Act'of 1828 would have operated, and the widow would have taken the whole, notwithstanding her alienage, she being a resident of the State. The purport of the argument on this appeal is, to give the Act of 1828 a liberal and enlarged construction, and to extend its operation to cases which do not fall within its terms. The Chancellor himself, who presided on the circuit trial, has adopted the reasoning which supports this construction, though he felt himself constrained to decide in a manner different from what would otherwise have been his judgment, on the authority of the law case of Keenan vs. Keenan, (7 Rich. 845.)
It is said, that in the construction of the Act of 1828, we *64 are not to be restricted by its title, which would seem to con-iine its purview to the subject of escheats. This I admit, or rather, I admit the doctrine on which the proposition rests. The title, or preamble of an Act, or both together, may be resorted to in aid of a doubtful interpretation, or for the explication of an ambiguity. It is too clearly settled to admit the shadow of a doubt, that the title or preamble of a statute, singly or together, is not to prevail against the plain language or manifest import of the enacting clause's; even though they contain provisions entirely different from the subject matter of the statute, as set forth in the title and. preamble.'
But in the Act of 1828, there is the most perfect harmony between the title and the enacting clause. The former declares it to be an Act to amend the escheat laws; and the latter provides,.not for the distributive share which a widow shall take of her intestate husband’s estate, (which had been already effectually done by previous Acts,) but to remove under certain circumstances set down in the Act, the disability of an alien widow to take at all; and to declare, that on certain conditions, the lands of the intestate should not escheat, where otherwise, and before that Act, they would have escheated.
The next inquiry will be, in what cases, according to a proper construction of the Act of 1828, is an alien widow entitled to a widow’s share of an intestate husband’s estate. The first and most conspicuous condition is, that she must be a resident of the State, which condition is fulfilled in this case. The second condition is, (and here is the difficulty, though to my mind it is equally plain,) that the title to the land must otherwise vest in the State, or lie liable to escheat. Alienage is the same as nonexistence, as to the right or capacity of taking real estate by descent. Therefore, if an intestate has many children who are aliens, and one who is a native, or naturalized citizen, the latter would take the whole estate, as if he were the only child; the existence of the others, as to the right to inherit, not being recognized. And so of any other given case *65 on the same principle; which has been clearly settled by a series of decisions. The plaintiffs, who are. legally the next of kin of the intestate, would on this principle, be entitled to take under the Act of distributions, the whole of the intestate’s real estate, though he had left other relations nearer in propinquity of blood, (even children,) who were aliens. The intestacy of John Pull did not, therefore, give rise to a case of escheat, either as to the whole or a part of his real estate. The title did not vest in the State, nor was in any way liable to escheat. Now the manifest import, nay the plain language of the Act of 1828 is, to give to the alien widow who is a resident of the State, the lands of her intestate husband, where the same would otherwise vest in the State or be liable to escheat. By the provisions of this Act, the State merely intended to grant to a resident widow the escheated property' of her deceased husband’s estate, without an intention to interfere with the claims of other persons having a right under the existing laws. Suppose that after the death of the husband in this instance, the State had by an Act granted to the widow, all the lands of the intestate, the title of which had vested in the State, or which were liable to escheat: — the widow could take nothing under such a grant, for the obvious reason, that there were no lands of the intestate, the title of which had vested in the State, or which were liable to escheat; said lands having already vested in the plaintiffs as next of kin, they being under no disability of alienage, or otherwise. The only difference between the Act supposed, and that of 1828 is, that one is general and the other special. Couched in the same language, they would, be construed in the same manner.
I have already adverted to the case of Keenan vs. Keenan, decided by the law Court of Appeals. The conclusion at which I have arrived by the foregoing reasoning is in harmony with the judgment of the law Court "in that case. This being a question of law, I cannot but regard that decision as authoritative ; though the question does not seem from the report to *66 have been much discussed. For this reason, the Chancellor ■who tried this cause, did not consider himself so much bound by the decision, as he would otherwise have done. Yet he considered himself so far constrained, as to follow it against his own convictions.
.Upon the whole, I am satisfied that the judgment of this Court which I am now to announce, is supported by reasons whose cogency'cannot be resisted, as well as by an authority we are bound to respect.
It is ordered and decreed that the circuit decree be affirmed, and the appeal be dismissed.
DtmiaN, Oh., concurred.
WARDLAW, Ch., absent from indisposition.

Appeal dismissed.